UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

JEFFREY E. SIMPSON,         )
                               )
                               )
v.                           )     Criminal  No.  03-96-P-S
                               )     Civil No.     5-125-B-S
                               )
                               )     Criminal No.  04-25-B-S
                               )     Civil Nos.    05-126-B-S
UNITED STATES OF AMERICA,   )
                               )
                               )

## <u>RECOMMENDED DECISION ON TWO 28 U.S.C. § 2255 MOTIONS</u>

Jeffrey Simpson is serving a 327-month federal sentence after pleading guilty in

two separate criminal cases.  Simpson admitted to being a felon in possession of a firearm

in violation of 18 U.S.C. § 922(g)(1) (Criminal No. 03-96-P-S) and that he violated 18

U.S.C. § 1951 when he committed a robbery (Criminal No. 04-25-B-S).  Simpson has

now filed two almost mirror-image 28 U.S.C. § 2255 motions[1] challenging his sentence

imposed by this Court in a single sentencing proceeding.  Simpson asserts two grounds:

one pertaining to counsel's performance in failing to challenge and consult with Simpson

about the contents of his amended pre-sentence report thereby causing Simpson to lose a

deduction for acceptance of responsibility and the other claiming that he was

psychologically incompetent at the time of his sentencing and was not able to protect his

rights during that hearing.  The United States has filed a consolidated motion seeking

summary dismissal of the two § 2255 motions (Criminal No. 05-125-B-S, Docket No. 5;

---

[1]       Simpson filed these two 28 U.S.C. § 2255 motions on August 12, 2005.  He was sentenced on September 10, 2004.  There is a one-year statute of limitation for seeking 28 U.S.C. § 2255 relief, <u>see</u> 28 U.S.C. § 2255 ¶ 6(1).

Criminal No. 5-126-B-S-, Docket No. 5) and I recommend that the Court grant its request

and deny both of Simpson's § 2255 motions.

## *Discussion*

### *The Contents of Simpson's 28 U.S.C. § 2255 Pleadings*

In his two 28 U.S.C. § 2255 motions Simpson sets forth the following two

grounds:

> Ground One: Ineffective Assistance of Counsel
> My attorney did not review the amended pre sentence report with me, he
> did not object to the contents of the report and failed to instruct me on my
> right to disprove alleged facts in the pre-sentence report as amended which
> cause me to lose deduction points for acceptance of responsibility.
>
> Ground Two:  Incompetent for Sentencing
> I told the Justice at my sentencing I had severe head trauma, confusion,
> etc, and heavily medicated.  I was oblivious and uncertain of my rights at
> the hearing.  I could not understand that I needed to object to the amended
> pre-sentence report.[2]

Simpson did not pursue a direct appeal and in the area of the form-motions

relevant to this issue, Simpson writes: "My attorney did not inform me of his mistakes

and failed to preserve my rights."[3]

Simpson's responses to the United States' motions to dismiss were originally due

November 21, 2005.  Simpson filed a motion to extend time for filing his responses

because of his involvement in a state-post-conviction proceeding and the time was

extended to December 7, 2005.  He then filed a second motion for enlargement of time

indicating that he was engaged in litigation to enjoin prison officials from barring his

---

[2]     There are minor, non-substantive differences between the two motions.  With respect to my
quotations in this opinion of Simpson's handwritten pleadings I have made some alterations to his
punctuation and capitalization for clarity's sake.
[3]     The United States questions whether or not Simpson's second ground can be pursued in a 28
U.S.C. § 2255 motion as opposed to a direct appeal.  In light of the fact that the ground has no underlying
merit I do not discuss this concern.

access to case law that he needed in order to respond to the United States' motion to dismiss.  Simpson was given an extension until January 6, 2006.  He then filed a third motion seeking an extension, this time indicating that he had other pending actions and was having difficulty obtaining case law from prison officials, and I granted him until February 6, 2006.  Simpson then filed a fourth motion for an enlargement of time representing that he had just obtained access to the law library materials and was in need of time to prepare his brief.  I allowed Simpson one final extension, setting March 6, 2006, as his final response deadline; Simpson filed a response memorandum and affidavit on that day.

In his consolidated response Simpson again argues that counsel's performance caused his sentence "to become more lengthy or extended th[a]n what was required by law." (Opp'n Mot. Dismiss at 1.)  He asserts that counsel failed to "object to inaccurate, false and misleading allegations in the pre-sentence report" and failed to "review, disclose or discuss prejudicial allegations" in that report.  (<u>Id.</u>)  He claims that the amended pre-sentence report "contained allegations of escape, violence, erratic behavior, etc., of which the United States District Court relied upon to deny the petitioner's points for acceptance of responsibility and thus increasing the petitioner's sentence." (<u>Id.</u> at 2.)

With respect to his competency at sentencing, Simpson states: "In light of the evidence in the record there is ample documentation for this court to conclude that the petitioner's behavior was erratic, abnormal, and quite frankly biz[]ar[re] prior to sentencing." (<u>Id.</u> at 3.)  He further faults counsel for not filing a motion for psychiatric review.  (<u>Id.</u> at 1, 4.)

In his affidavit, Simpson sets forth the following relevant paragraphs:

1. At no time did I ever receive or review the contents of the pre-sentence report which was revised by the Government, and contained allegations of attempted escape, assaults, violence and other erratic behavior of the petitioner immediately prior to sentencing and concerning the above captioned matter.
2. My defense counsel never provided me with a copy of the amended presentence report, nor did he discuss the allegations mentioned in ¶ 1 above with me or explain the impact these allegation might have on the length of my sentence.
3. Bureau of Prisons policy also prohibits me from having a pre-sentence report, and to this date I do not actually know what these allegations contained in the amended PSR actually consist of. See Attachment.[4]
4. I deny the allegations articulated in ¶¶ 1 and 2 above as false, misleading and inaccurate.
5. My counsel did not object to the amended PSR, not having been provided within (35) days of sentencing,[5] he did not object to the false allegations in the PSR or discuss or inquire with me as to the veracity of the allegations contained in the amended PSR, nor did he object to the false allegations.
6. Directly prior to sentencing, I suffered severe head trauma. I was hearing voices, I was heavily medicated on psychotropic anti-psychotic medication and anti-anxiety medication. I could not follow or comprehend what was transpiring during sentencing. And to date I cannot even remember what took place during sentencing due to being intoxicated to a point of near oblivion during sentencing.

Simpson also attaches medical reports from the Maine State Department of Corrections including three mental health assessments.

**The Merits of Simpson's Two Grounds**

Two tenets of 28 U.S.C. § 2255 adjudication jump to mind apropos both of Simpson's 28 U.S.C. § 2255 grounds. First, when, a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Second:

---

[4]     The attachment Simpson seems to be referring to is a Federal Bureau of Prison response to his inmate request form seeking verification that this was the policy of the Bureau.
[5]     In his responsive memorandum Simpson also asserts that counsel did not receive the amended report thirty-five days before sentencing which Simpson believes is required by Federal Rule of Criminal Procedure 32(e)(2). He also believes that counsel then failed to object to the amended report within the fourteen-days for objection set forth in Federal Rule of Criminal Procedure 32(f)(1). Simpson's attorney utilized his opportunity to object to the report and his objections are duly noted by the report preparer.

> When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing.  In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.

Id. (citations omitted).

### The "Lost" Deduction for Acceptance of Responsibility Attributed to Counsel's Ineffective Assistance

"A criminal defendant claiming a Sixth Amendment ineffective assistance violation must establish that (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

The Revised Pre-Sentence Report, signed August 16, 2004, contains one paragraph which lays out an argument for an obstruction of justice adjustment and two paragraphs arguing against an adjustment for acceptance of responsibility.  (The obstruction of justice concern is relevant to the acceptance of responsibility issue as the Court is measuring counsel's performance in view of the various sentencing balls in the air.)  As Simpson claims, on the one hand, that he is completely ignorant of their content and, on the other hand, that they are false and misleading, I set them out in full.

With respect to the question of an adjustment for obstruction of justice the United States Probation Officer wrote:

> On June 21, 2004, the defendant made an attempt to grab a deputy's weapon during a return trip of an armed transport to Bangor from a State

Court appearance.  On June 26, 2004, and June 29, 2004, the defendant removed his shackles and handcuffs while he was in the Maine State Prison Recreation Room for the one hour per day recreation period, which was the only time the defendant was allowed out of his holding cell.  This is a violation of the administrative rules of that institution and an Incident Report was filed documenting the defendant's rule violation.  On July 9, 2004, it was discovered that Simpson had removed several of the metal fins from one of the air vents in his cell.  When questioned about this, Simpson stated that he was going to use this as a way to escape or get out[-]of [-]state transfer.  Simpson declined to tell prison officials who he had passed the metal fins out to.  On July 12, 2004, after returning from a court appearance, the defendant was searched for contraband.  As part of this search, a hand held metal detector was used on the defendant.  The metal detector alerted prison staff to an area in Simpson's tail bone.  The defendant was put on a contraband watch at that time.  Shortly after being placed on this watch, the defendant asked to be escorted to speak with an officer with regard to the watch.  Simpson then produced two sharpened pieces of metal with a handcuff key tied in the middle of them, which had been concealed in his rectum.  Pursuant to U.S.S.G. § 3C1.1, Application Note 4(e), this conduct constitutes an attempt to escape custody prior to sentencing.  This office believes that based on this information, the defendant has obstructed justice.

(Rev. PSR at 5-6.)

With regards to an adjustment for acceptance of responsibility, the report reads in Paragraphs 10 and 10a:

Since the defendant's incarceration on the instant offenses, he has been the subject of several incidents.  On two occasions while the defendant was out of his cell for his one-hour recreation period, he escaped his handcuffs and shackles.  On January 17, 2004, the defendant attempted to assault another inmate at the Maine State Prison, swinging a steel bar at the inmate, ultimately striking and breaking a mirror in the weight room.  On June 21, 2004, while being transported to Superior Court in Bangor, the defendant attempted to take a firearm from one of the transport deputies.  On July 12, 2004, after returning from a court appearance, the defendant was searched for contraband.  As part of this search, a hand held metal detector was used on the defendant.  The metal detector alerted prison staff to an area in Simpson's tail bone.  The defendant was put on a contraband watch at that time.  Shortly after being placed on this watch, the defendant asked to be escorted to speak with an officer with regard to the watch.  Simpson then produced two sharpened pieces of metal with a handcuff key tied in the middle of them, which had been concealed in his rectum.

The defendant has also been observed tampering with the construction of his cell. On August 23, 2004, the defendant demanded medical treatment at the Maine State Prison. When the responding doctor suggested that Simpson was faking his symptoms, the defendant jumped out of his chair onto the table and went for the doctor. Guards grabbed the defendant, who made attempts to bite the staff and was extremely combative and verbally abusive. Simpson had to be maced and then placed in a restraint chair. Later that same afternoon, Simpson demanded medical treatment for a cut. During the medication pass, the defendant asked for some Tums from a female nurse, who attempted to pass them to him directly. When she did so, the defendant grabbed her wrist and attempted to pull her arm through the tray slot in the door, while yelling that he hoped to "break her fucking arm." A guard was able to break Simpson's grip and the tray slot was closed. Simpson yelled repeatedly that they should "watch" him because he "planned to take a hostage the first chance he gets." Maine State Prison officials have informed the United States Marshal Service that the defendant has begun putting blood under his fingernails and threatening to scratch whomever comes into his cell first. As paragraph 63 of this report indicates, the defendant has been diagnosed with Hepatitis C. This behavior does not demonstrate the defendant's acceptance of responsibility for his actions in the instant offenses. This office does not believe that, based on this continued behavior while incarcerated, the defendant has met the requirements for the acceptance of responsibility adjustment.

(Id. at 6-7.)

The report reflects that Simpson's attorney sent an August 27, 2004, letter of

objection to the report. One of the objections was to the paragraphs pertaining to the

acceptance of responsibility adjustment. On this score the report indicates:

The defendant believes that he is eligible for the acceptance of responsibility adjustment and objects because this adjustment has not been applied in these paragraphs. This office believes that paragraph 10 clearly spells out the reasoning as to why this adjustment was not applied. The defendant's entry of guilty pleas in the above offenses does not even begin to mitigate the behavior that is cited in this paragraph to the point where this office would consider applying the acceptance of responsibility adjustment. This office believes that the defendant's actions over the past several months provide[] a much better measurement of Simpson's acceptance of responsibility. Therefore, the report will not be modified.

7

(Id. at 21.)  Defense counsel also preserved Simpson's arguments under Blakely v. Washington, 542 U.S. 296 (2004) vis-à-vis a two level increase on the grounds that the firearm in the offense had an altered or obliterated serial number, a three level increase on the grounds that a dangerous weapon was brandished or possessed, and the addition of two points on the ground that less than two years had lapsed between the commission of the instant offense and Simpson's release from custody on a prior offense.  (Id. at 22.)  In addition, Defense counsel objected to the notion that his criminal history was under represented in the report (id. at 22); to this the report preparer responds that even if Simpson's arrest record was narrowed as requested he would have 26 criminal history points which was double the minimum amount to trigger a category of VI.  (Id.)

The United States submitted four arguments apropos the report, one of which was, in agreement with the report, that Simpson's criminal history category did not adequately reflect the seriousness of his past criminal conduct and the likelihood that he would commit other crimes.  (Id. at 21.) The United States indicated that it wanted to ask the court to impose consecutive sentences for the two offenses and argue for an upward departure if the court followed the guideline calculations in the report.  (Id.)

At the pre-sentencing conference Simpson's attorney indicated that he and his client were "pursuing our objections to paragraph 10, that Mr. Simpson deserves a – at least a two-level or a three-level decrease for acceptance of responsibility."  (Sentencing Tr. at 2-3.)[6]  He also continued to press his trio of Blakely challenges.  (Id. at 3.) And counsel restated his objection to the report's assertion that the Court should consider an upward departure.  (Id. at 3.)  In addition counsel made an additional Blakely challenge to the obstruction of justice paragraph set forth above.  (Id. at 5.)  Counsel did concede that

---

[6]     The transcript is a single transcript of the presentence conference and the sentencing proceeding.

success with respect to his criminal history objection would not affect the criminal

history category of VI.  (Id.)

The following exchange – relevant to Simpson's first 28 U.S.C. § 2255 ground --

then unfolded:

> THE COURT: Very good. All right. Anyone have any witnesses today,
> government?
> PROSECUTOR: We do have witnesses regarding acceptance of
> responsibility and obstruction of justice given the defendant's positions
> this morning, Your Honor.
> THE COURT: All right. And --
> PROSECUTOR: Well, perhaps I should -- if I might, perhaps I should ask
> Mr. Hartley to clarify if he is in dispute of any of the facts in support of
> that position that probation took, because we would just be offering these
> folks to support the facts that are in the PSR. Is he merely not disputing
> the incidents that occurred, but rather whether or not legally that means
> Mr. Simpson should not get acceptance or should get obstruction?
> DEFENSE COUNSEL: Your Honor, we're not disputing the facts.
> THE COURT: All right. So –
> THE PROSECUTOR: Then we do not have any witnesses.
> THE COURT: Very good. Do you have any witnesses?
> DEFENSE COUNSEL: We do not have any witnesses.

(Id. at 5-6.)

The sentencing hearing was convened.  With respect to Simpson's Blakely related

objections, the Court removed the two points for the serial number obliteration, (id. at

14), the two points for the obstruction of justice (id. at 14-15), and then declined to

enhance the criminal history points on the less than two years from release concern (id. at

15).  Regarding Simpson's objection to the brandishing a weapon enhancement, the Court

overruled counsel's objection concluding that the prosecution's version to which Simpson

plead guilty adequately supported the enhancement under Blakely. (Id. at 16- 18.)

Vis-à-vis Simpson's hopes of getting an acceptance of responsibility adjustment,

the hearing proceeded as follows:

THE COURT: Very good. Let's deal now with the issue of acceptance of responsibility. Defendant is requesting a departure in terms of reducing the offense level, either by two or three levels, for acceptance of responsibility. It's defendant's burden in this regard. I'll listen to the gov -- to Mr. Hartley to allocate at this point.

DEFENSE COUNSEL: Your Honor, I'll refer the court to United States Sentencing Guidelines 3E1.1 and the Application Note No. 3, indicating that -- essentially that timely guilty pleas and truthfully admitting the conduct -- offense conduct will constitute -- and I quote -- significant evidence of acceptance of responsibility. I'll suggest to the court that Mr. Simpson has done exactly that to both matters in front of the court. That he has entered a guilty plea to each in a timely manner so as to avoid the necessity of the government in preparing for trial in any matter; that he has agreed to the offense conduct in the prosecution version and has thereby fully accepted responsibility for his actions; and that the court should consider that as significant evidence of his acceptance of responsibility. And I would suggest to the court that -- that that in and of itself can be enough for the court to -- to impose the acceptance of responsibility adjustment.

THE COURT: All right. It's my understanding that the defendant isn't arguing that the facts contained in the presentence report are inaccurate. The defendant is arguing that from a legal standpoint, the pleas of guilty, even taking into account those facts, entitle him to acceptance of responsibility; is that right?

DEFENSE COUNSEL: I'm sorry. I didn't hear the first part.

THE COURT: You're not arguing that the facts contained in the presentence report are erroneous. Your argument is that even accepting the facts set forth in the presentence report with regard to his post plea conduct, that he's still entitled to acceptance of responsibility because of his timely guilty pleas?

DEFENSE COUNSEL: Yes, Your Honor, that's true.

THE COURT: All right. Let me hear from the government.

THE PROSECUTOR: Your Honor, obviously the position of the defendant this morning was to make clear that they do not, as you noted, object to any of the factors written in the PSR, and as amended, the presentence report adequately describes the bizarre behavior the defendant has engaged in since his imprisonment, incarceration, and waiting for sentence. It is the government's position that this is an exceptional case of someone who has not at all accepted responsibility given his conduct while at three different facilities in the state of Maine. And I would also note that we use that argument to support our argument, which, as a result of Blakely, is not going forward, but we argued that it was so blatant that it should have been obstruction of justice, and obviously, because of Blakely, that -- and the court's ruling on that, he will not get that enhancement, but that's even more important from the government's standpoint as to why he should lose any acceptance of responsibility

points. I also point the court to a new First Circuit case of United States v. McLaughlin, which indicated that the court can consider defendant's conduct at any point after an indictment is handed out or an information is filed, and as result of that, Mr. Simpson is clearly not entitled to acceptance of responsibility. Thank you.

THE COURT: Is there any response, Mr. Hartley?

DEFENSE COUNSEL: Nothing. Thank you.

THE COURT: All right. I'm not going to grant any acceptance of responsibility in this case. This is a paradigm case of an individual who, though entering a guilty plea, has not acted in a manner that recognizes guilt, the recognition of his guilt, or any behavior that supports that recognition of guilt. I think the McLaughlin case is not anything new. It's one the courts have been aware of in terms of its principles for some period of time. The behavior of this defendant after the guilty plea is atrocious and will not be rewarded by a reduction for acceptance of responsibility. And I specifically adopt the facts set forth in the presentence investigation report in paragraphs 10 and 10-A in that regard.

(Id. at 18-21.)[7]

---

[7]     Although not part of the Court's acceptance of responsibility determination the correctness of that finding is buffered by Simpson's allocution:

> Your Honor, just a couple of things. You know, I've been in prison since I've been a little boy, and I never had no probation, I never had no programs. I know I'm not going to get none here, you know, and I'm not asking nobody for no break. But I gotta tell you that what made me everything that I am is just the system that I'm -- the way I got dealt with by the system. Because when I look at the way we deal with our poverty, when you come from poor, white trash, that's how you get treated, and that's -- that's what made me the way I am. That's all I got to say.

(Id. at 30.)

Also, I note that when deciding on what end of the guideline range to ultimately sentence Simpson the Court opined:

> In determining sentence in this case, I've taken into account those factors set forth in 18 U.S.C. Section 3553. Those factors include the need for rehabilitation, the need for just punishment, the need for protection of the public, and deterrence of similar offenses.
>
>      Mr. Simpson, in this case the primary obligation of this court, taking into account your prior history, your activities with regard to these crimes, and your activities both before and after your guilty pleas, require primarily the protection from the public. I've listened -- for the public.
>
>      I listened very carefully to you when you told me that your present problems are primarily the result of the system. I disagree with you. I think the primary problem you have is yourself, and it will never end until you recognize that you, for some reason, either enjoy committing criminal activity, or you believe you can get away with it.
>
>      In this case the court feels that you're unlikely to change that attitude, and it's my duty, as well as my obligation, based on what I've seen here, to sentence you to the maximum term allowable under these sentencing guidelines, and that's what I intend to do. It appears to me fairly clearly that as soon as you get out of jail, you're most likely going to go ahead and commit other crimes. The protection of the public demands the maximum sentence.

(Id. at 33.)

There can be no doubt that at sentencing this Court made it crystal clear that it did not believe that Simpson was entitled to any sentencing benefit for acceptance of responsibility.  Counsel made a stoic effort to argue the point but had little to run with beyond Simpson's decision to plead guilty.  The record also evinces the high stakes for Simpson should the Court adopt some of the United States' position. Counsel was able to convince the Court on several points favorable to Simpson and unfavorable to the United States.  See Cofske v. United States, 290 F.3d 437, 445 (1st Cir. 2002)

It is true that Simpson now argues that there were grounds to challenge the factual representations in the PSR that he could have fleshed out if given an opportunity. However, the United States sets forth in detail the substance of the key paragraphs of the revised presentence report that underpinned and were adopted as findings by the court in making its acceptance of responsibility determination; Simpson – who was granted four enlargement of times to respond to the United States' motion to dismiss – has not once identified which portion or portions of the report he would challenge or disprove.  Given that the record demonstrates that the United States had fact witnesses ready to testify at the time of trial on the acceptance of responsibility issue in particular and that defense counsel concluded he had no basis to challenge the factual representations in the report, Simpson would need to come forward with specific and concrete descriptions of how he would have had counsel challenge the factual basis for the Court's acceptance of responsibility determination.  Simpson's patently self-serving, [8] and entirely conclusory

---

[8]      Indeed, in pressing his competency ground Simpson admits that his behavior prior to sentencing was, "in light of the evidence in the record there is ample documentation for this court to conclude that the petitioner's behavior was erratic, abnormal, and quite frankly biz[]ar[re] prior to sentencing" yet for this ground wants the Court to question the factual information in the amended pre-sentence report of escape, violence, and erratic behavior. I also note that at the end of the sentencing hearing Simpson conceded that he fought with correctional personnel because he was mad. (Sentencing Tr. at 39-42.)

allegations are simply not enough to warrant a more in-depth inquiry under the

performance and/or prejudice prong to the <u>Strickland v. Washington</u>, 466 U.S. 668

(1984) ineffective assistance of counsel inquiry.

**_Simpson's Competency at Sentencing_**

As the Court will recall, the issue of Simpson's state of mind on the day of

sentencing was brought to the Court's attention by defense counsel during the pre-

sentence conference:

> DEFENSE COUNSEL: I have spoken with my client, and he has a dispute this morning regarding his medication. I have had sufficient contact with him over the last several months, although somewhat hampered by his being held at the state prison and several issues that he has had. But I do not have any question regarding his competence and his ability to communicate with me, and I never have. He does claim this morning to have been diagnosed with panic attacks and agoraphobia, and he is in a difficult state this morning.
>
> THE COURT: Well, I would be pretty upset myself if I were in his position. So I can understand that.
>
> DEFENSE COUNSEL: I would expect so. He has indicated to me that he believes that going through with the sentencing this morning in his current state will be difficult without an additional medication. He's prescribed Klonopin, and he receives one and a half milligrams in the morning, one and a half at noontime, and one -- and two milligrams before he goes to bed. I understand from him and through speaking with jail personnel that he has received his one and a half, normal dosage for this morning.
>
> THE COURT: Good.
>
> DEFENSE COUNSEL: However, he indicates that he does have breakout anxiety, if you will, triggered by events such as this today, and that he is in a very difficult state right now. And he's asked me to ask the court to intervene and get him a prescription which would allow him to proceed here today, and I indicated to him I would speak with the court about that.
>
> THE COURT: Okay. And I've heard you. I will defer on that until I can get a look at him in terms of his competency and make that determination, and we'll move on from there.
>
> DEFENSE COUNSEL: Thank you.
>
> THE PROSECUTOR: If it's at all helpful for the court, his doctor from the prison is here, who was prepared to testify, and I will keep him here until you make that determination.
>
> THE COURT: That will be fine. Is that all – is that the only medication he's taking is Klonopin?

DEFENSE COUNSEL: That's my understanding.
THE COURT: Very good. Let's go into court.

(Sentencing Tr. at 6-9.)

At the sentencing hearing the following exchange took place with respect to

Simpson's competency:

THE COURT: Are you Jeffrey Simpson?
THE DEFENDANT: Yes, sir.
THE COURT: Okay. You can remain seated. Mr. Simpson, how old are
you?
THE DEFENDANT: 39.
THE COURT: 39.
THE DEFENDANT: 38.
THE COURT: 38. Okay. And are you married?
THE DEFENDANT: Yeah, I am, yeah, yeah, I am.
THE COURT: All right. Speak up so I can hear you, though.
THE DEFENDANT: I'm sorry I'm mumbling, Your Honor. I've been --
I've been subject to about eight cell extractions in the past two weeks. So
my mind's kind of 18 messed up. I've been kicked in my head about a
hundred 19 times.
THE COURT: Okay.
THE DEFENDANT: So I'm a little slow today.
THE COURT: All right. Do you have any children?
THE DEFENDANT: Yeah, I have a little baby girl.
THE COURT: Baby girl, is that what you said?
THE DEFENDANT: Yeah.
THE COURT: All right. And how far did you go in school?
THE DEFENDANT: I went to seventh grade, and then I got my GED.
THE COURT: Very good. ....And can you read English, Mr. Simpson?
THE DEFENDANT: Yes, sir.
THE COURT: And can you write English?
THE DEFENDANT: Yes, sir.
THE COURT: All right. And your attorney tells me you're taking
Klonopin; is that right?
THE DEFENDANT: Yeah, yeah, I am, but, you know, they're not giving
me sufficient amounts to control my problem that I got. I had a hard time
getting them, and that was one of the reasons why I got -- I got what you
call a beat-down by a goon squad up there because the doctors are trying
to take the drugs away from me, and I told them that I needed it.
        I've been in prison 17 years, and I never got help -- mental help for
my -- you know, treatment for it because I didn't know what was wrong
with me, and finally, when I found out, started getting the medication, then
this guy tells me -- somebody else adjusted the medication over the

14

weekend from a different facility. He got mad about it. He tried to take me off of it. I was chained up like I am now. So I jumped over the table because I was mad and frustrated, and I never ended up getting ahold of him, but it took me – they -- they extracted me out of there and put me in a thing called the chair. They leave you there for like, you know, 12, 18 hours.

THE COURT: When did -- when did this happen, Mr. Simpson?

THE DEFENDANT: Ah, I can't really remember days, Your Honor, because I -- I got -- I told my attorney already I got severe head trauma, and I haven't been to the hospital for it yet. I've got something wrong with my back. I've got lead and plastic rammed up inside of my veins -- okay – in an attempt to make them take me for mental attention. That's what I had to reduce myself to, and it still didn't work. But my mind right now as far as recollecting things, I'm really having a hard time remembering dates.

THE COURT: Where have they been keeping you?

THE DEFENDANT: Last night they kept me in solitary confinement.

THE COURT: Where?

THE DEFENDANT: It was in the Maine State Prison, a 20-cellblock, but I was the only prisoner held in that block, under a constant watch.

THE COURT: When were you taken here?

THE DEFENDANT: Um, ah, this morning.

THE COURT: And why do you -- why are you given the Klonopin, because of anxiety?

THE DEFENDANT: Yeah, yes, sir.

THE COURT: All right. And I'm told you got your last dose this morning; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: And what is that, Mr. Hartley, one and 10 a half milligrams? Is that what you said?

DEFENSE COUNSEL: That's my understanding, yes.

THE COURT: Is that right, Mr. Simpson?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And you're due on your next 15 dose at noontime; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Have you had any other drugs or alcohol in the past 24 hours, Mr. Simpson?

THE DEFENDANT: No, I've been in prison, Your Honor.

THE COURT: All right.

THE DEFENDANT: I can't try it now -- because I don't know if I'm -- I feel like I can't finish this proceeding because I feel like I'm going to have a breakdown right now.

THE COURT: Well, we'll see how you do. You just let me know how you're doing. Based on my observation of the defendant in this case and based on my discussion with him, based on his answers, I find that this

15

defendant is competent to be sentenced. Now, Mr. Hartley is your
attorney; is that correct?
THE DEFENDANT: Yes.
THE COURT: All right. And do you authorize [defense counsel] to speak
for you?
THE DEFENDANT: Yes.

(Id. at 9- 13.)

And finally, prior to imposing its sentence the Court indicated: "The record

should reflect that Mr. Simpson, in my observation, has been just fine during this

sentencing proceeding and has followed the proceeding with some attention." (Id. at 29.)[9]

---

[9]    Although the following exchange did not play a part in the Court's determination that Simpson
was competent during the sentencing proceeding, it does support the Court's conclusion on this score as
Simpson was able to coherently articulate his health-care concerns following the full sentencing
proceedings:
THE COURT: [Defense counsel], anything else?
DEFENSE COUNSEL: Nothing regarding the – the sentence, Your Honor. Mr. Simpson
wishes me to make known to the court again, as he did earlier, about his medical
concerns. He wishes the court to know about issues with his back and also the issues with
the lead in his arm and also the issues that he's been having with his head. He believes
that he's not receiving sufficient medical treatment.
THE COURT: All right. That is noted on the record, Mr. Simpson.
THE DEFENDANT: I'm not receiving any medical treatment. They refuse to take me to
the hospital because they say I'm too dangerous.
THE COURT: All right.
THE DEFENDANT: And I've got a serious back injury. I've got an injury -- I've been
extracted like seven times in the past two weeks. I don't know if you know what an
extraction team is. They come in with helmets and pads, shields, and a couple times I
fought with them, so they got mad about it.
THE COURT: They got mad because you fought with them. Is that what you said?
THE DEFENDANT: Yeah, and that made them a little more, you know, overreacting
when they started kicking me in the face and stuff like that, and –
THE COURT: I've found, Mr. Simpson, that if you're nice to people, they tend to be nicer
back to you.
THE DEFENDANT: I believe you're right there, Your Honor.
THE COURT: Okay.
THE DEFENDANT: What I'm -- what I'm trying – my point I'm trying to get across is
that I lost -- I lost the feeling in my leg, my arm's all numb like I fell asleep on it, and I
can't get them to bring me into any hospital or give me any treatment. I requested my
lawyer to put in some type of contempt proceedings because I guess the U.S. Marshals
have primary care over me now or primary custody, and the State is unwilling to give me
proper medical attention.
THE COURT: Have you ever been in the federal prison system, Mr. Simpson?
THE DEFENDANT: No, sir.
THE COURT: All right. You're going to find that there's a high level of medical care
available for you there, and I can tell you that they will give you a complete checkup
before they put you through the process.

16

To be competent Simpson had to have had a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and that he "had a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960); see 18 U.S.C. § 4241; Godinez v. Moran, 509 U.S. 389, 391 (1993) (holding that the Dusky standard of competency applies to guilty plea proceedings); id at 402-09 (Kennedy, J., concurring)(arguing that there should be a single standard of competency for all criminal proceedings, from arraignment through return of verdict, citing State v. Reed, 41 La. Ann. 581, 582, 7 So. 132 (1889) and its parenthetical statement: "It is elementary that a man cannot plead, or be tried, or convicted, or sentenced, while in a state of insanity"); United States v. Garrett, 903 F.2d 1105, 1115 (7th Cir. 1990) ("[T]he need for competency extends beyond trial to the sentencing phase of a proceeding."). Neither defense counsel nor the Court were bound to pursue a competency hearing simply because Simpson complained about his medication and professed that he was feeling like he might have a breakdown during the proceeding (which he did not). See, e.g., United States v. Lebron, 76 F.3d 29, 33 (1st Cir. 1996) (guilty plea); Figueroa-Vazquez v. United States, 718 F.2d 511, 512 (1st Cir. 1983)

---

THE DEFENDANT: I've found that these officers here -- that you have here are a lot more –
THE COURT: Okay.
THE DEFENDANT: -- a lot more professional than -- you know, I –
THE COURT: I'm sure they appreciate the compliment.
THE DEFENDANT: I'm not sure whether I'm going back there or not, and -- back to the prison, I don't know. You know, I don't know what's going on after these proceedings.
THE COURT: Well, you're going to be -- let me tell you. You're going to be moved to, I think, Massachusetts, and then you'll be in process to be moved to the proper federal facility.
THE DEFENDANT: Well, that would be -- that would be -- that would make me happy.
THE COURT: Good, good. All right. This defendant is remanded into the custody of the United States Marshal for the District of Maine in execution of sentence imposed.
(Id. at 39-42.) It is also notable that Simpson had ample opportunity to contest his competency at this juncture when he was speaking at length about his health care ails after he had been informed that the Court considered him competent but he did not broach the issue.

(guilty plea).  As the transcript of the sentencing hearing demonstrates, the Court

proceeded in a measured fashion in face of Simpson's articulated concern and Simpson's

participation in the hearing was coherent.  The reports Simpson attached to Simpson's 28

U.S.C. § 2255 pleading from the Maine State Department of Corrections assessing his

mental health do little to advance his claim that he was not competent during sentencing

as they harmonize with this Court's reading of Simpson's mental state on the day of

sentencing.  The Court's competency determination and counsel's decision not to seek a

competency hearing are not reproachable when analyzed under Dusky.

### *Conclusion*

For the reasons above I recommend that the Court **GRANT** the United States'

motions to dismiss (Criminal No. 05-125-B-S, Docket No. 5; Criminal No. 5-126-B-S-,

Docket No. 5) and **DENY** these two 28 U.S.C. § 2255 motions.

### NOTICE

A party may file objections to those specified portions of a
magistrate judge's report or proposed findings or recommended decisions
entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by
the district court is sought, together with a supporting memorandum,
within ten (10) days of being served with a copy thereof.  A responsive
memorandum shall be filed within ten (10) days after the filing of the
objection.

Failure to file a timely objection shall constitute a waiver of the
right to *de novo* review by the district court and to appeal the district
court's order.

March 15, 2006

/s/Margaret J. Kravchuk
U.S. Magistrate Judge